**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SPIROS B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 21 C 2767** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Spiros B. seeks to overturn the portion of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record and the parties' respective arguments, the Court affirms the Commissioner's decision.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on March 7, 2013 and March 18, 2013, respectively, alleging in both applications that he became disabled on December 24, 2010, due to: depression, severe back pain, lumbar spine impairment, and a herniated disc. (R. 171-81, 211). Born in 1960, Plaintiff was 50 years old as of the alleged disability onset date, making him a person closely approaching advanced age (age 50-54). (R.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

180); 20 C.F.R. § 404.1563(d); 20 C.F.R. § 416.963(d).  He subsequently changed age categories to a person of advanced age (age 55 or older) and is now closely approaching retirement age (age 60 or older).  20 C.F.R. § 404.1563(e); 20 C.F.R. § 416.963(e). Plaintiff lives in an apartment with his mother and completed a year and a half of college. (R. 212, 702-03).  Between March 2001 and February 2009, Plaintiff worked at various establishments as a bartender or restaurant host.  (R. 242-43).  Most recently, he held a position as a truck driver from May to December 2010, but he quit working on December 24, 2010 due to his impairments and has not engaged in any substantial gainful activity since that date.  (R. 242).

The Social Security Administration denied Plaintiff's applications at all levels of review, and he appealed to the district court.  On January 4, 2019, this Court reversed and remanded the case to the Commissioner for further proceedings.  (R. 776-808); *Barbarigos v. Berryhill*, No. 17 C 3234, 2019 WL 109373 (N.D. Ill. Jan. 4, 2019).  The Court held that the administrative law judge did not properly evaluate the opinion evidence of record, made a flawed assessment of Plaintiff's residual functional capacity, and erred in discounting Plaintiff's subjective statements regarding his symptoms.  (R. 799-808); *Barbarigos*, 2019 WL 109373, at *11-15.  On February 16, 2019, the Appeals Council vacated the final decision of the Commissioner and remanded the case to administrative law judge Patricia Kendall (the "ALJ") with instructions to "offer [Plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record[,] and issue a new decision."  (R. 811).  The ALJ held a supplemental hearing on August 29, 2019 and heard testimony from Plaintiff, who was represented by counsel, from medical

expert John F. Kwock, M.D. (the "ME"), and from vocational expert Jill Radke (the "VE"). (R. 694-759).

On January 6, 2020, the ALJ found that Plaintiff's degenerative disc disease and carpal tunnel syndrome are severe impairments, but that they do not alone or in combination with his non-severe impairments meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 671-73). After reviewing the evidence, the ALJ concluded that prior to October 22, 2015, Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (R. 673-79). The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC could perform Plaintiff's past relevant work as a bartender and restaurant host and so was not disabled. (R. 679). Beginning on October 22, 2015, however, Plaintiff became presumptively disabled under the Medical-Vocational Guidelines given his age (55) and background. (R. 679-80). As a result, the ALJ concluded that Plaintiff was entitled to benefits from October 22, 2015 through the date of the decision. (R. 680-81). Plaintiff asked the Appeals Council to review the portion of the ALJ's decision denying him benefits between December 24, 2010 and October 22, 2015. (R. 906-13). The Appeals Council declined to assume jurisdiction on March 23, 2021. (R. 653-59). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) failed to properly weigh the opinion evidence of record; and (2) erred in discrediting his

subjective statements.  For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.    Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).[2]  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy."  *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing (citing 20 C.F.R. § 404.1520(a)-(g)).  If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Id.*

In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).  *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019).  The Court "will uphold the ALJ's

---

[2]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

**B.    Analysis**

**1.    Opinion Evidence**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in weighing the opinion evidence of record. Since Plaintiff filed his claims in March 2013, the treating source rule applies. A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2); *see Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from

5

a specialist, and (6) other factors brought to the attention of the ALJ.  20 C.F.R. § 404.1527(c)(2)-(6); *see Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

Plaintiff argues that the ALJ improperly relied on the opinion from the non-examining ME when she should have given controlling or great weight to the opinions from three of his treating physicians:  family medicine doctor Christin Gallo, D.O.; internist Denis J. Frank, M.D.; and pain medicine specialist Steven H. Eisenfeld, M.D.  The Court considers each opinion in turn.

### a.    Dr. Gallo

Dr. Gallo provided several opinions regarding Plaintiff's functioning prior to October 22, 2015: an April 8, 2013 Multiple Impairment Questionnaire; an undated later with a facsimile date stamp of April 22, 2013; and two Disability Impairment Questionnaires dated November 25, 2014.  (R. 264-71, 295, 348-50, 606-10).  In all of these documents, Dr. Gallo assessed Plaintiff with herniated lumbar discs and lumbar radiculopathy causing severe mid-to-low back pain, radiating paresthesias in both legs, and numbness.  (R. 264-65, 295, 348-49, 606-07).  The clinical findings supporting these diagnoses consisted of a limping gait, muscle spasms, and a January 11, 2011 MRI of the lumbar spine showing bulging discs at L3-L4 and L4-L5.  (R. 264-65, 295, 348, 606).  Dr. Gallo described Plaintiff's back pain as constant, worsening, and progressive, and estimated that it ranged from moderately severe to severe, or 8 to 9 out of 10.  (R. 266, 295, 349, 607).  As a result of his impairments, Plaintiff:  could sit, stand, and walk for less than one hour in an 8-hour workday; needed to get up and move around every 15 to 20 minutes and not sit again for 15 minutes; could occasionally lift and carry up to ten pounds; could never push, pull, kneel, bend, stoop, or drive; and should avoid wetness and heights.  (R. 266-67, 270,

608).  In addition, Plaintiff's pain, fatigue, or other symptoms were severe enough to either frequently or constantly interfere with his attention and concentration.  (R. 269, 609). According to Dr. Gallo, Plaintiff needed to take unscheduled breaks every 15 minutes and rest for 15 minutes before returning to work, had good days and bad days, and would be absent from work more than three times a month.  (R. 269-70, 350, 610).

In affording Dr. Gallo's opinions minimal weight, the ALJ first explained that they were inconsistent with her own treatment notes and the record as a whole.  (R. 678-79). The Court finds no error in this assessment.  The first available treatment note is from December 27, 2010 when Plaintiff went to the Scottsdale Healthcare emergency department ("ED") complaining of low back pain radiating to his right buttock and thigh. (R. 280).  An exam showed tenderness to palpation on the right sciatic notch.  (R. 281). Plaintiff was diagnosed with sciatica and discharged with prescriptions for Flexeril, Percocet, and prednisone.  (R. 281-82).  Shortly thereafter, on January 3, 2011, Plaintiff started seeing Dr. Gallo.  He reported having back surgery in 2003 due to a herniated lumbar disc and said his pain had worsened after he got a job as a truck driver in 2010. (R. 298, 675).   He also complained that he had not noticed any benefit from the medications he received from the ED.  (*Id.*).

On exam, Dr. Gallo observed a waddling gait, tenderness to palpation just inferior to the right posterior superior iliac spine, decreased range of motion of the lumbar spine in all directions, and positive straight leg raise test on the right.  (R. 300, 675).  Dr. Gallo diagnosed lumbago and right sciatica, instructed Plaintiff to continue taking Flexeril and Percocet, recommended an MRI of the lumbar spine, and referred Plaintiff for physical therapy ("PT").  (R. 300-01, 675).  There is no evidence in the record that Plaintiff pursued

PT, but a January 11, 2011 MRI showed "degenerative disc changes at L4-L5 with broad-based disc bulge and endplate remodeling slightly asymmetric to the right and resulting in some right-sided neural foraminal narrowing but no convincing evidence for nerve root impingement." (R. 292, 674-75). The test also revealed a "left lateral disc protrusion and annular tear at L3-4" which did not significantly impinge upon or displace the exited left L3 nerve root laterally. (*Id.*).

Plaintiff did not seek further care for over a year until April 16, 2012 when he returned to Dr. Gallo for medication refills. He affirmatively denied experiencing back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, or arthritis at that time, and Dr. Gallo noted no abnormal musculoskeletal findings. (R. 303-05, 675). Dr. Gallo refilled Plaintiff's prescriptions for an antidepressant and a statin for high cholesterol. (R. 305). Though Dr. Gallo instructed Plaintiff to follow up in three months, he did not return for nearly a year. On April 3, 2013, Plaintiff presented to Dr. Gallo to "get paperwork filled out for disability." (R. 307, 675). He complained of back pain primarily on the right side of his back radiating down both legs at a level of 7 to 9 out of 10, but he was not taking any pain medication because he claimed he could not find anything that helped. (*Id.*). On exam, Plaintiff exhibited tenderness to palpation just inferior to the right posterior superior iliac spine, decreased range of motion in all directions of the lumbar spine, and a positive straight leg raise test on the right. (R. 309, 675). Dr. Gallo diagnosed lumbago, right-sided sciatica, and a herniated disc with an onset date of April 3, 2013. (*Id.*). Plaintiff refused pain medications, stating that they did not work, so Dr. Gallo prescribed gabapentin and instructed Plaintiff to return in one year or as needed. (*Id.*).

At his next appointment with Dr. Gallo on September 16, 2013, Plaintiff reported that the gabapentin was not helping with his pain so he had tried a friend's Vicodin, which provided some relief. (R. 310, 675). Dr. Gallo did not perform a physical examination that day but did agree to prescribe Vicodin (hydrocodone-acetaminophen) at Plaintiff's request. (R. 311-12, 675). Plaintiff did not see Dr. Gallo again due to a change in his insurance. On February 13, 2014, he established primary care with Landon S. Hoecker, M.D., who assessed Plaintiff with chronic lumbago that was treated with medical management when necessary. (R. 329, 675). During a follow-up exam with Dr. Hoecker on February 20, 2014, Plaintiff exhibited normal range of motion, normal muscle strength, and normal stability in all extremities with no pain on inspection. His balance, gait, and coordination were all intact with no motor weakness or sensory loss, and Dr. Hoecker did not assess any back problem requiring treatment at that time. (R. 325, 675).

On March 7, 2014, Plaintiff told Dr. Hoecker that he was still bothered by back pain and was doubling his Vicodin dosage to get relief. (R. 319, 675). Dr. Hoecker added lumbar degenerative disc disease and lumbago to Plaintiff's list of chronic problems and prescribed Vicodin. (R. 321). At his last appointment with Dr. Hoecker on June 25, 2014, Plaintiff continued to complain of intermittent low back pain but was only occasionally using Vicodin when necessary. (R. 315, 675). A physical exam was entirely normal with no motor weakness; intact sensation, balance, gait, and coordination; and normal fine motor skills. (R. 317, 675). Dr. Hoecker described Plaintiff's lumbar degenerative disc disease as stable and noted that his lumbago was managed with medication. (R. 318, 675).

A few months later, on October 14, 2014, Plaintiff went to internist Denis J. Frank, M.D., for the first time to get disability forms completed.[3]  (R. 342, 676).  A musculoskeletal exam revealed normal range of motion, reasonable full strength of 5/5 in the upper and lower extremities, and normal deep tendon reflexes in both legs, though Plaintiff did have some "problems with neck mobility" and could not perform straight leg raising beyond 45 degrees bilaterally.  (R. 343, 676).  Dr. Frank suspected "some degree of functionality of complaint" and referred Plaintiff to a pain management specialist.  (*Id.*).  On October 22, 2014, Plaintiff started treating with pain specialist Steve Eisenfeld, M.D.  He complained of low back pain radiating down his left leg that averaged a level of 7/10.  (R. 385, 675).  According to Dr. Eisenfeld, though Plaintiff "does have discomfort, he feels it is tolerable with the use of his current medical regimen."  (R. 387).

On examination, Plaintiff could rise easily from a seated position, had normal tandem gait, was able to ambulate on heels and toes, had full strength of 5/5 in both legs, had no tenderness overlying the bilateral sacroiliac joints, and had a negative straight leg raise test bilaterally.  (R. 387, 675).  He could achieve flexion with his fingertips just below the knees, had moderate restriction in extension, and experienced low back and left buttock pain during both flexion and extension.  There was also flattening of normal lumbar lordosis, and mild tenderness across the lumbosacral junction and in the left gluteal region.  (*Id.*).  Dr. Eisenfeld diagnosed arthropathy of the lumbar facet joint, degeneration of lumbar intervertebral disc, lumbosacral radiculitis, lumbar post-laminectomy syndrome, and pain in the lumbar spine.  (*Id.*).  Plaintiff wanted to hold off on a facet block injection so Dr. Eisenfeld instructed him to continue taking

---

[3]     It is unclear from the record why Plaintiff did not return to Dr. Hoecker after June 2014.

Hydrocodone/APAP (Vicodin), which had no side effects. (*Id.*). The following month, on November 25, 2014, Dr. Gallo opined that Plaintiff remained largely incapable of sitting, standing, or walking and could not sustain any type of employment. (R. 348-50, 606-10, 676).

Plaintiff saw Dr. Eisenfeld three more times between December 1, 2014 and May 14, 2015. At the December 1 appointment, he had flattening of normal lumbar lordosis and mild tenderness across the lumbosacral junction in the left gluteal region, but he once again had a normal gait, could rise easily from a seated position, had full strength of 5/5 in both legs, and had a negative straight leg raise test bilaterally. (R. 392, 676-77). Plaintiff still did not want an injection and Dr. Eisenfeld added Lyrica to his medication regimen. (R. 392-93, 676). On February 26, 2015, Plaintiff told Dr. Eisenfeld that the Lyrica had provided noticeable relief, decreasing his pain from a 7/10 to a 4/10. (R. 578, 677). A physical exam was unchanged and Dr. Eisenfeld instructed Plaintiff to continue his medication regimen. (R. 581, 677). At a follow-up appointment on May 14, 2015, Plaintiff received medication refills but Dr. Eisenfeld did not conduct a physical examination. (R. 584, 677). Thereafter, Plaintiff did not seek further treatment again until after October 2015.

The ALJ reasonably concluded that these records do not support the severe limitations imposed by Dr. Gallo. For example, Dr. Gallo indicated that she based her opinion in part on the fact that Plaintiff walked with a limp and suffered from muscle spasms. Yet no such symptoms are documented in Dr. Gallo's treatment notes, or anywhere else in the record. (R. 678). *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion "when the

opinion is inconsistent with the physician's treatment notes."). In fact, as the ALJ observed, Plaintiff's gait was normal during appointments with Dr. Hoecker on February 20 and June 25, 2014, and during appointments with Dr. Eisenfeld on December 1, 2014 and February 26, 2015. (R. 678).[4] *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record.").

Drs. Hoecker, Eisenfeld, and Frank also documented other unremarkable findings that contradicted Dr. Gallo's extreme assessment of Plaintiff's functioning. As noted, in February and June 2014, Plaintiff had normal range of motion, normal muscle strength, intact sensation, intact balance, intact coordination, and full stability with no pain on inspection. (R. 317, 325, 675). In October 2014, Dr. Frank reported normal range of motion, reasonable full strength of 5/5 in the upper and lower extremities, and normal deep tendon reflexes, though Plaintiff did have some problems with his neck and could only straight leg raise to 45 degrees. (R. 343). And in October 2014, December 2014, and February 2015, Plaintiff was able to rise easily from a seated position, tandem gait, and walk on heels and toes. He also had full strength in his legs and negative straight leg raise tests despite some flattening of normal lumbar lordosis, mild tenderness across the lumbosacral junction and left gluteal region, and low back pain on flexion and extension. (R. 387, 390, 392, 580, 675-77). Plaintiff simply ignores all of the normal findings and fails to explain how some mild tenderness, low back pain, and unspecified neck "problems" constitute "extensive abnormalities" that show a near complete inability

---

[4] Plaintiff also exhibited a stable gait and normal muscle tone during pharmacology appointments on January 28, March 4, and July 8, 2015. (R. 473, 481, 643).

to sit, stand, and walk for close to five years between December 24, 2010 and October 22, 2015. (Doc. 25, at 4). *See Stephanie H. v. Comm'r of Soc. Sec.*, No. 20 C 4600, 2021 WL 2986298, at *6 (N.D. Ill. July 14, 2021) ("[T]he medical record is what it is and cannot be ignored: examination after examination with mostly normal results. A plaintiff can't apply for benefits and dismiss the bulk of h[is] medical record as insignificant.").

Beyond these inconsistencies, the ALJ discounted Dr. Gallo's opinion for the additional reason that she never referred Plaintiff for more diagnostic studies that could have supported the severe limitations. (R. 678). As it stands, Plaintiff had no imaging or testing done concerning his back after the January 2011 MRI which showed some disc protrusions at L3-L5 but no impingement of the nerve root. (R. 292). Moreover, Plaintiff reported adequate pain relief with medication, and he declined facet block injections recommended by Dr. Eisenfeld that would be expected to provide further relief. (*Id.*). Plaintiff denies that he responded well to treatment, arguing that "all the evidence shows minimal or no improvement." (Doc. 22, at 13). In support Plaintiff cites: (1) a January 3, 2011 treatment note from Dr. Gallo where he reported that Percocet, Flexeril, and prednisone were not helping his pain (R. 298); (2) an April 3, 2013 treatment note from Dr. Gallo where he reported that he was not taking any medication because nothing relieved his pain (R. 307); and (3) a September 16, 2013 treatment note from Dr. Gallo where he reported that gabapentin was not working to control his pain (R. 310). According to Plaintiff, given "the opiate crisis in this country, it is understandable that [he] did not wish to continue taking narcotics especially as Dr. Gallo noted he could not tolerate them." (Doc. 22, at 13; R. 295).

The flaw in this argument is that Plaintiff requested and started taking Vicodin in September 2013 (R. 310-12), and reported improvement over time. Though Dr. Hoecker had to increase the dosage on March 7, 2014 (R. 321), as of June 25, 2014, Plaintiff was only occasionally taking Vicodin when necessary. (R. 315). And when Plaintiff saw Dr. Eisenfeld on October 22, 2014, he said that the discomfort in his back was "tolerable" with the Vicodin. (R. 387). Dr. Eisenfeld subsequently added Lyrica to Plaintiff's medication regimen (R. 392-93), and by February 26, 2015, he had achieved a 40% decrease in his symptoms. (R. 578). Even before starting Vicodin, Plaintiff was able to go for more than two years between January 2011 and April 2013 without any medication refills or treatment for his back pain.

Plaintiff says that even if Dr. Gallo's opinions were not entitled to controlling weight, the ALJ still erred by failing to weigh them in accordance with the other factors set forth in 20 C.F.R. § 404.1527(c). (Doc. 22, at 13-14). This is not correct. The ALJ acknowledged Dr. Gallo's specialty as a primary care provider, discussed each of Plaintiff's four visits with her, and reasonably determined that the extreme limitations set forth in the opinions were not supported by the objective evidence. (R. 675, 678). Plaintiff may believe that he has greater functional restrictions, but as the Seventh Circuit has explained, the Court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Viewing the record as a whole, the ALJ provided several good reasons for giving only minimal weight to Dr. Gallo's opinions and that decision is supported by substantial evidence. *See Biestek*, 139 S. Ct. at 1154 ("Substantial evidence is not a high hurdle to

clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").  Plaintiff's request to remand the case for further consideration of Dr. Gallo's opinions is denied.

### b.  Dr. Frank

Dr. Frank completed a Disability Impairment Questionnaire for Plaintiff on October 14, 2014.  (R. 601-05).  Dr. Frank indicated that Plaintiff's diagnoses included lumbar degenerative disc disease, lumbago, and chronic low back pain (R. 601), and noted that Plaintiff was taking Norco (hydrocodone) for the pain.  (R. 602).  The remaining portions of the questionnaire set forth significant restrictions in Plaintiff's ability to:  sit, stand, and walk (less than one hour each in an 8-hour workday); lift and carry (occasionally up to 10 pounds); grasp/turn/twist objects, perform fine manipulations, and reach with his arms including overhead (moderate limitation).  (R. 603-04).  After sitting for 30 minutes, Plaintiff needed to lie down with his legs elevated for 30 minutes to an hour.  He also needed to take unscheduled breaks every half hour and would miss more than three days of work per month.  (R. 603-05).  And his pain, fatigue, or other symptoms were severe enough to frequently interfere with his attention and concentration.  (R. 604).

In declining to give this opinion controlling or significant weight, the ALJ first noted that Plaintiff completed most of it himself, as evidenced by his use of the first person (e.g., "primary left side pain at my buttock," "I have to take a pain med every hour if I go out," "if I'm home, I sit or stand and every 1/2 hour to hour I have to lie down").  (R. 602, 605, 678).  Dr. Frank was apparently surprised that Plaintiff checked the box indicating he was not a malingerer, writing "? DJF" next to the answer.  The handwriting makes clear that Plaintiff also filled in the clinical and laboratory findings purportedly supporting his

diagnoses (the January 2011 MRI, ED records from December 2010, and records from neurosurgeon Dr. Noam Stadlin).[5] (R. 601). And Dr. Frank documented that most of the stated limitations were "per patient," "by patient," and "this filled out by pt [patient]!" (R. 603-04, 678). Aside from listing out Plaintiff's diagnoses, Dr. Frank merely observed that "back pain is difficult objectively to assess – lower ext[remity]/upper ext[remity] without much weakness." (R. 605). The ALJ reasonably declined to give weight to a medical "opinion" largely supplied by Plaintiff.

The October 14, 2014 opinion was also inconsistent with Dr. Frank's own treatment note that day, which documented normal range of motion, reasonable full strength of 5/5 in the upper and lower extremities, and normal deep tendon reflexes in both legs. (R. 342-43, 678). Though Plaintiff had some "problems with neck mobility" and could only straight leg raise up to 45 degrees, he offers no explanation as to how those minimal findings demonstrate that he could barely sit, stand, or walk. (R. 343, 678). *See Pavlicek*, 994 F.3d at 781. As with Dr. Gallo's opinions, moreover, Dr. Frank's opinion was contradicted by other evidence showing normal gait, normal range of motion, normal muscle strength, intact sensation, intact balance, intact coordination, full stability, and good relief with medication from January 2011 through May 2015. *Alejandrina A.*, 2023 WL 2539239, at *12. Finally, the ALJ found it significant that Dr. Frank, an internist not specializing in orthopedics, examined Plaintiff only one time before providing the opinion, and never saw him again thereafter. (R. 676, 678).

---

[5]     There are no treatment notes from Dr. Stadlin in the record. Plaintiff also indicated that he tried PT and cortisone shots without success (R. 605), but the record does not contain evidence of such treatment.

Viewing the record as a whole, the ALJ did not err in declining to give weight to Dr. Frank's opinion since it was contradicted by the objective evidence and largely written by Plaintiff.  The case need not be remanded for further consideration of this issue.

### c.  Dr. Eisenfeld

Dr. Eisenfeld completed a Disability Impairment Questionnaire for Plaintiff on December 12, 2014.  (R. 430-34).  He opined that as a result of Plaintiff's lumbar spondylosis, lumbar degenerative disc disease, lumbar radiculitis, post-laminectomy syndrome, and lumbago, he was able to sit for one hour in an 8-hour workday, stand and walk for less than one hour in an 8-hour workday, and only occasionally lift and carry 10 pounds.  (R. 430, 432).  When sitting, Plaintiff needed to get up and move around 2-3 times an hour and not sit again for 5-10 minutes.  (R. 432).  In Dr. Eisenfeld's view, Plaintiff's pain, fatigue, or other symptoms were severe enough to frequently interfere with attention and concentration (meaning from 1/3 to 2/3 of an 8-hour workday).  (R. 433). Plaintiff needed to take unscheduled breaks to rest every hour for 5 to 10 minutes during the day, and would be absent from work 2-3 times per month due to his impairments.  (R. 433-34).

The ALJ recognized that Dr. Eisenfeld is a board-certified anesthesiologist specializing in pain management who examined Plaintiff four times between October 2014 and May 2015 and assessed limitations similar to those provided by Drs. Gallo and Frank.  (R. 676-77, 678).  But once again the objective evidence failed to corroborate the extent of those limitations.  Dr. Eisenfeld's own treatment notes documented normal gait, full strength of 5/5 in both legs, ability to ambulate on heels and toes, ability to rise easily from a seated position, negative straight leg raises bilaterally, and ability to flex forward

until his fingertips hit just below the knees. (R. 387, 392, 580). *See Pavlicek*, 994 F.3d at 781. And as discussed, other examinations routinely produced normal gait, normal range of motion, normal muscle strength, intact sensation, intact balance, intact coordination, and full stability from January 2011 through May 2015. (R. 317, 321, 325, 343, 675). *Alejandrina A.*, 2023 WL 2539239, at *12. Like Drs. Gallo and Frank, moreover, Dr. Eisenfeld did not send Plaintiff for additional diagnostic testing. Nor did he recommend PT, a treatment Plaintiff had declined to follow in January 2011. (R. 678). Furthermore, Plaintiff did not undergo facet block injections and experienced significant relief with medication alone. (R. 678).

Viewing the record as a whole, the ALJ did not commit reversible error in discounting the opinion from Dr. Eisenfeld, which was inconsistent with his own treatment notes and the record as a whole. Since the ALJ's decision in that regard is supported by substantial evidence, the case need not be remanded for further consideration. *See Biestek*, 139 S. Ct. at 1154.

### d. The Medical Expert Dr. Kwok

The ALJ ultimately based her RFC determination on the opinion from the ME, "who was in the best position to review the entire record from 2010 through 2019." (R. 678). Dr. Kwok, an orthopedist, testified that Plaintiff had a history of a decompression procedure on the lumbar spine, and mild residual degenerative disc and degenerative joint disease in the lumbar spine. (R. 733). According to Dr. Kwok, prior to October 22, 2015, Plaintiff was capable of: frequent lifting and carrying of 10 pounds; occasional lifting and carrying of 20 pounds; never lifting more than 20 pounds; sitting, standing, and walking for 6 hours in an 8-hour workday; occasional climbing of ladders and scaffolds;

frequent climbing of ramps and stairs; frequent balancing and kneeling; occasional stooping and crouching; no crawling; and frequent operating of foot controls. (R. 736-37). Dr. Kwok found no upper extremity limitations so allowed for full reaching overhead, pushing, pulling, handling, fingering, and feeling. (R. 736). Plaintiff could occasionally work in high, exposed, unprotected environments, and occasionally work in proximity to heavy or moving machinery. (R. 737).

The ALJ gave Dr. Kwok's opinion significant weight and reasonably incorporated his stated limitations into the RFC. The ALJ noted that Dr. Kwok's specialty in orthopedics directly related to Plaintiff's degenerative disc disease, the doctor had an opportunity to review the entire record, and his testimony was consistent with the objective findings (detailed earlier in this opinion). (R. 677-78). The ALJ's reliance on the expertise of Dr. Kwok, a trained medical professional, fairly disposes of Plaintiff's assertion that the ALJ improperly provided her own lay interpretation of the evidence or in any way "played doctor." (Doc. 25, at 2-3). *See Stephanie A. v. Kijakazi*, No. 21-CV-775-SPM, 2022 WL 1153464, at *8 (S.D. Ill. Apr. 19, 2022) (quoting SSR 96-6p, 1996 WL 374180, at *2) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act.").

Plaintiff argues that the January 2011 MRI cited by Drs. Gallo, Frank, and Eisenfeld provides clinical support for more significant functional restrictions. (Doc. 22, at 11-12). But Dr. Kwok explained that the MRI showed only mild to moderate degeneration at L3-L4 and L4-L5, with no evidence of nerve root compression. (R. 734-35, 737-38). Physical exams likewise did not show any motor, sensory, or deep tendon deficits. (R. 734-35).

19

Plaintiff cites no evidence to the contrary. The only other objection Plaintiff raises to Dr. Kwok's opinion is the faulty assertion that the opinions from his treating physicians were entitled to greater weight because they were uncontradicted and well-supported. (Doc. 22, at 13-14). For all the reasons stated, that argument has no merit. The ALJ did not err in accepting Dr. Kwok's testimony and the case need not be remanded for further consideration of that issue.

### e.     Summary

To summarize, the ALJ reasonably declined to give controlling or substantial weight to the opinions from Plaintiff's treating physicians since they not supported by their own treatment notes or the other objective evidence of record. The ALJ also fairly explained why she gave significant weight to Dr. Kwok's opinion and incorporated his stated restrictions into the RFC. The Seventh Circuit has made clear that "[t]he court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020). The ALJ's decision satisfies this burden and, contrary to Plaintiff's suggestion, addresses the concerns raised in the Court's prior opinion. (Doc. 22, at 16). *See Barbarigos*, 2019 WL 109373, at *11-12. Plaintiff's motion to reverse or remand the case for further consideration of the opinion evidence is denied.

### 2.     Subjective Symptom Evaluation

Plaintiff also seeks reversal or remand based on the ALJ's failure to credit his subjective statements regarding his symptoms. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and

intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff testified at his first hearing on June 23, 2015 that he stopped working due to his back pain, which radiates from the lower back down to his left side and occasionally up the right side. (R. 52, 56). The pain requires him to alternate sitting and standing every 20 to 30 minutes for three to four hours, after which he needs to lie down. (R. 55). At the August 29, 2019 hearing, Plaintiff stated that his pain is never below a level of 4-5/10, and sometimes increases to an 8 or 9/10, but he was able to control it at that time with gabapentin. (R. 712). Prior to that he was taking both gabapentin and hydrocodone. (R. 713). Plaintiff testified that he can only walk for 20 minutes at a time, sit for no more than 30 to 45 minutes at a time, and stand in place for 10 to 15 minutes at a time. (R.

720).  He estimated that he can lift less than 10 pounds and cannot drive more than a mile from his home.  (R. 721-22).  Though he can make simple meals and load the top rack of the dishwasher, he does not perform any other household chores.  (R. 721).

The ALJ's discussion of the medical evidence makes clear that she did not find Plaintiff's complaints of disabling pain and limitations from December 24, 2010 through October 22, 2015 consistent with the objective record or his course of treatment.  The ALJ noted, for example, that Plaintiff did not seek any treatment for back problems between January 2011 and April 2013, and at an unrelated appointment in April 2012, he was doing well with no physical abnormalities.  (R. 675).  *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A] history of sporadic treatment . . . can undermine a claimant's credibility.").  On April 3, 2013, Plaintiff stated that his pain was at a level of 9/10 and interfered with his sleep but he refused any medications, purportedly because nothing worked.  Yet he started taking Vicodin in September 2013 after achieving good results with a friend's prescription.  (R. 309, 675).  *See, e.g., Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Throughout 2014, Plaintiff's physical exams showed largely normal functioning and good pain control with gabapentin and only occasional use of Vicodin as needed.  (R. 317, 321, 325, 343, 387, 392, 675).  From late October 2014 into 2015, Plaintiff repeatedly declined facet block injections, and with the addition of Lyrica his pain was reduced by 40% as of February 26, 2015.  (R. 387, 392-93, 675, 578, 676-77).  And as noted, none of Plaintiff's physicians referred him for additional diagnostic testing or suggested he

undergo PT or other pain-relieving treatments after January 2011. *See Edward H. v. Kijakazi*, No. 20 C 3847, 2023 WL 2683171, at *10 (N.D. Ill. Mar. 29, 2023) (citing *Simila*, 573 F.3d at 519) ("As a general matter, an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility.").

Plaintiff is correct that the decision does not contain a specific section dedicated to an evaluation of his credibility. (Doc. 22, at 15-16; Doc. 25, at 4-5). But the Seventh Circuit has held that a reviewing court should read an ALJ's decision holistically. *Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021). In addition, an "ALJ's credibility assessment need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 Fed. App'x 951, 961 (7th Cir. 2013)). Viewing the record as a whole, the ALJ provided valid reasons throughout the decision for discounting Plaintiff's subjective statements, and Plaintiff's motion to remand the case for further consideration of this issue is denied. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

## CONCLUSION

For reasons stated above, Plaintiff's Motion for Summary Judgment [21] is denied and the Commissioner's Motion for Summary Judgment [23] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: June 30, 2023

SHEILA FINNEGAN
United States Magistrate Judge